UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FRANK LIVERMORE, ET AL | CIVIL ACTION |
| VERSUS | |
| JOEL ARNOLD, ET AL | NO. 10-507-B-M2 |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 20, 2011.

_____
MAGISTRATE JUDGE CHRISTINE NOLAND

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FRANK LIVERMORE, ET AL                                    CIVIL ACTION

VERSUS

JOEL ARNOLD, ET AL                                        NO. 10-507-B-M2

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Dismiss Pursuant to FRCP Rule 12(b) (R. Doc. 31) filed by defendants, Scott M. Perrilloux ("Perrilloux") and Catherine T. Peever ("Peever")(collectively "defendants"). Plaintiff, Frank Livermore ("Livermore"), has filed an opposition (R. Doc. 32) to defendants' motion.

## FACTS & PROCEDURAL BACKGROUND

This action was filed by Livermore and another plaintiff, Linda Cervizzi ("Cervizzi"), against four (4) defendants, Livingston Parish Sheriff's Deputy Joel Arnold ("Deputy Arnold"), Livingston Parish Sheriff Willie Graves ("Sheriff Graves"), District Attorney for the 21st Judicial District Perrilloux, and Assistant District Attorney for the 21st Judicial District Peever. The case arises out of the arrest and criminal prosecution of Livermore. Livermore owned land located at 36726 Longleaf Drive, Independence, Louisiana. Cervizzi owned a mobile home located on the property. *See*, R. Doc. 1, ¶6. In June 2009, the plaintiffs evicted Christopher Smith ("Smith"), who had been living in Cervizzi's mobile home on Livermore's property. *Id.*, ¶7. The plaintiffs allege that, after they evicted Smith, one of the defendants, Deputy Arnold, trespassed onto the plaintiffs' land in order to

1

reinstate Smith and put him in possession of the plaintiffs' property.[1] The plaintiffs allege that they became noticeably upset at Deputy Arnold's presence and refused to comply with his orders to turn over the mobile home to Smith. *Id.*, ¶14. Deputy Arnold then arrested Livermore and charged him with interfering with a police officer. *Id.*, ¶19. District Attorney Perrilloux and Assistant District Attorney Peever then prosecuted Livermore in Louisiana state court for interfering with a police officer in violation of La. R.S. 14:108. *Id.*, ¶¶23-24. Livermore pled not guilty to that charge. Following a bench trial in the 21st Judicial District Court, the trial judge acquitted Livermore on March 16, 2010. *See*, R. Doc. 12-1, at 1. The plaintiffs then brought this suit under 42 U.S.C. §1983 and Louisiana state law. *See*, R. Doc. 1, ¶2.

In their complaint, plaintiffs allege that, pursuant to §1983, Perrilloux and Peever are liable in both their official and individual capacities for: (1) malicious prosecution and negligent and/or intentional infliction of emotional distress; (2) deliberate indifference; (3) "confecting and/or implementing the official policy, practice, or custom of the 21st Judicial District Attorney of prosecuting all misdemeanor charges regardless of merit;" and (4) Perrilloux's negligent hiring, retention, training, and supervision of Peever.[2] *See,* R. Doc. 1, ¶¶38, 39, 40, 41.

On August 3, 2010, plaintiffs' claims against Perrilloux and Peever in their individual

---

[1] In the Complaint, the plaintiffs allege that the reason that Deputy Arnold trespassed is because Smith, or "persons acting on his behalf," contacted friends that he had at the Livingston Parish Sheriff's Office to help him get possession of the plaintiffs' property. See, R. Doc. 1, ¶9.

[2] Plaintiffs assert that Perrilloux is liable for his negligent failure to supervise and train assistant district attorneys to ensure that they properly investigate and verify police officers' allegations regarding alleged criminal activities and that he is liable for his official policy or custom of disregarding the merits of all allegations of all misdemeanors allegedly committed in Livingston Parish and for his deliberate indifference to the rights of those accused.

2

capacities were dismissed with prejudice on the basis that the doctrine of absolute prosecutorial immunity applies to such claims. Perrilloux and Peever have now filed the present motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), wherein they seek dismissal of plaintiffs' remaining claims against them in their official capacities as well as plaintiffs' state law claims.

## LAW & ANALYSIS

**I.    Fed. R. Civ. P. 12(b)(6) standard:**

To avoid dismissal of a suit pursuant to a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *In re the Complaint of Great Lakes Dredge & Dock Co., LLC*, 2010 WL 4013336, at *5, quoting *Ashcroft v. Iqbal*, – U.S.–, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In deciding whether the complaint states a valid claim for relief, the court is to accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Great Lakes Dredge*, at *5, citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court is not to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*, quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

**II.   Analysis:**

In *Imbler v. Pachtman*, the U.S. Supreme Court addressed the immunity granted to a state prosecutor being sued in his individual capacity. *Imbler v. Pachtman*, 424 U.S. 409,

3

96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Specifically, the Supreme Court held that prosecutors are absolutely immune from civil liability in §1983 actions when the actions complained of are "intimately associated with the judicial phase of the criminal process . . . in initiating a prosecution and in presenting the State's case." *Id.*, at 430-31. The Supreme Court extended a prosecutor's individual immunity to certain administrative activities in *Van de Kamp v. Goldstein*, – U.S.–, 129 S.Ct. 855, 859-861, 172 L.Ed.2d 706 (2009). The Court concluded that, when certain administrative activities, such as training, supervising, or implementing an information system, are of a kind that "itself is directly connected with the conduct of trial," such that it requires legal knowledge and "the exercise of related discretion," a prosecutor is entitled to absolute immunity in his individual capacity. *Id.*, at 862. The Court left open the question of whether some administrative activities, such as "workplace hiring, payroll administration, the maintenance of physical facilities, and the like," may subject a prosecutor to civil rights liability." *Id.* The Supreme Court reiterated that, while absolute immunity will sometimes deprive a plaintiff of rightful compensation from an unfair prosecutor, the "impediments to the fair, efficient functioning of a prosecutorial office that liability could create" made absolute immunity necessary." *Id.*, at 864.

As discussed above, the plaintiffs in the present case allege that Perrilloux and Peever are liable in their individual and official capacities for failure to investigate the charges against Livermore; for negligent hiring, training and supervision; for implementation of an official policy of prosecuting all misdemeanors regardless of merit; and for other state law torts. Prior to this case being transferred to this district from the Eastern District of

4

Louisiana, Judge Helen Berrigan of the Eastern District dismissed the above claims against Perrilloux and Peever in their individual capacities, stating that "[t]he plaintiffs' allegations, specifically that Perrilloux failed to properly train and supervise Peever, failed to investigate, as well as of the other federal allegations against him and Peever in their individual capacities are directly related to their decision to prosecute him, and are not derivative of any administrative tasks." In that ruling, Judge Berrigan declined to address the merits of the plaintiffs' remaining official capacity and state-law claims against the defendants. Through their present motion, Perrilloux and Peever seek to have those remaining claims dismissed, contending that the absolute immunity doctrine set forth in *Imbler* and extended by *Van de Kamp*, which applies to individual capacity claims, should also be applied to plaintiffs' official capacity claims. The undersigned finds that the Western District of Louisiana's recent decision in *Johnson v. Louisiana*, 2010 WL 996475 (W.D.La. 2010), is both instructive and highly persuasive on this issue.

In *Johnson*, a plaintiff, who had been convicted of the aggravated rape of a woman and incarcerated for 25 years before being exonerated by post-conviction DNA testing and released, brought a Section 1983 action against the current and former district attorney for the 11th Judicial District, the District Attorney's Office for that district, and several others. He alleged that the District Attorney's Office failed to disclose exculpatory evidence, that the failure to disclose exculpatory evidence resulted from deliberate indifference and from the policies and procedures of the DA defendants, and that the investigation of the rape in question was woefully inadequate. He alleged that the district attorney was liable in his supervisory capacity because the blood testing offered into evidence was misleading,

5

incorrect, inconclusive, and otherwise defective. He also asserted pendant state law claims against the DA defendants based on his "wrongful prosecution, unfair trial, conviction and confinement." As in the present case, the DA defendants moved to dismiss the plaintiff's claims against them pursuant to Rule 12(b)(6). They argued that the plaintiff's individual capacity claims failed to state a claim, that the official capacity claims were barred by the Eleventh Amendment, and that the plaintiff's *Monell* custom/policy claim was barred by the U.S. Supreme Court's decision in *Van de Kamp v. Goldstein*, – U.S. –, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009). They also sought dismissal of all of the plaintiff's pendant state law claims against them.

Like Judge Berrigan concluded in the present case, the Western District of Louisiana, in *Johnson*, held that the plaintiff's Section 1983 claims against the current and former district attorneys, in their individual capacities, were subject to dismissal pursuant to the doctrine of absolute prosecutorial immunity because their alleged conduct was "intimately associated with the judicial phase of the criminal process" and arose out of the prosecution of the plaintiff for aggravate rape. The court specifically rejected the plaintiff's arguments that the district attorneys had failed to train and supervise their subordinates, expressly rejecting reliance upon a Fifth Circuit Court of Appeals decision, *Thompson I*,[3] upon which the plaintiff in the present case likewise relies in support of his failure to supervise and train claims. In *Thompson I*, the Fifth Circuit held that a prosecutor's alleged act of hiding exculpatory blood evidence did not prevent the petitioner from establishing a Section 1983 claim against the Orleans Parish District Attorney's Office based upon a

---

[3] *Thompson v. Connick, et al*, 553 F.3d 856 (5th Cir. 2008).

failure to train.  The Western District of Louisiana, in *Johnson*, noted that *Thompson I* was not binding upon it for two reasons.  First, the original appellate opinion in *Thompson I* was vacated by the grant of rehearing *en banc*, and the district court's opinion was then affirmed only "by reason of an equally divided *en banc* court."  *See, Thompson II*, 578 F.3d 293 (5th Cir. 2009).  Secondly, the decisions of both the district court and the original appellate panel, in *Thompson I*, were decided prior to the Supreme Court's ruling in *Van de Kamp v. Goldstein*, – U.S. –, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009),[4] which expressly rejected

---

[4] In *Van de Kamp*, a plaintiff filed a Section 1983 action against a former district attorney and chief deputy district attorney alleging the prosecution's failure to communicate with defense counsel and to disclose potential impeachment evidence resulted from the failure to "adequately train and to supervise the prosecutors who worked for them as well as their failure to establish an information system about informants."  *Id.*, at 859.  A unanimous Supreme Court acknowledged that the plaintiff was attacking the office's administrative procedures, but nevertheless concluded that the district attorney was entitled to absolute immunity, stating the following:

> [P]rosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here.  Those claims focus upon a certain kind of administrative obligation - a kind that itself is directly connected with the conduct of trial.  Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an element of the plaintiff's claim.  The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like.  Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, *e.g.*, in determining what information should be included in the training or the supervision or the information-system management . . .
>
> * * *
>
> Moreover, because better training or supervision might prevent most, if not all, prosecutorial errors at trial, permission to bring such a suit here would grant permission to criminal defendants to bring claims in other similar instances, in effect claiming damages for (trial-related) training or supervisory failings.  Further, given the complexity of the constitutional issues, inadequate training and supervision suits could . . . "pose substantial danger of liability even to the honest prosecutor."  Finally, as *Imbler* pointed out, defending prosecutorial decisions, often years after they were made could impose "unique and intolerable burdens upon a prosecutor responsible annually for hundres of indictments and trials."

7

similar claims of failure to train and supervise. The Western District of Louisiana therefore found, in *Johnson*, that it was neither bound by nor persuaded by the Fifth Circuit's decision in *Thompson I.* The Western District of Louisiana also noted that, with respect to the plaintiff's claim against the DA defendants for a failure to investigate the claims against him, it did not need to determine whether such action (or inaction) was merely an investigative task, to which absolute immunity did not extend, or whether it was "intimately associated with the judicial phase of the criminal process" and therefore subject to absolute immunity, because a claim that a prosecutor failed to investigate is "not of constitutional dimension" since "[t]here is no such due process right."[5]

Although the Western District of Louisiana found that the DA defendants were entitled to absolute immunity with respect to all of the plaintiffs' Section 1983 individual capacity claims, the court nevertheless noted that such immunity did not apply to the plaintiff's official capacity Section 1983 claims. *See, Johnson*, at *10, citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-05, 87 L.Ed.2d 114 (1985)(absolute immunity is a personal defense that is unavailable in an official-capacity action); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009)(same); *Romero v. Boulder County DA"s Office*, 87 Fed.Appx. 696, 697-98 (10th Cir. 2004)(affirming dismissal of claims against prosecutor in his individual capacity based upon absolute immunity and affirming dismissal of claims against prosecutor in his official capacity on other grounds); *Robert v. Abbott*,

---

*Id.*, at 861-63.

[5] *Johnson*, at *10, quoting *Simmons v. Wainwright*, 585 F.2d 95, 96 (5th Cir. 1978)(per curiam); *See also, Arney v. Roberts*, 9 F.3d 116 (10th Cir. 1993), *cert denied*, 511 U.S. 1055, 114 S.Ct. 1618, 128 L.Ed.2d 345 (1994)("the charge that a prosecutor has failed to conduct a proper investigation does not state a constitutional claim").

8

2009 WL 902488, *11-12 (M.D.Ala. 2009)(holding that prosecutor was entitled to absolute immunity for the §1983 federal claims against him in his individual capacity; claims against prosecutor in his official capacity were dismissed on other grounds).

The Western District of Louisiana, in *Johnson*, explained that a suit against a public official in his official capacity "is *not* a suit against the official personally," but is "to be treated as a suit against the entity." *Johnson*, at *10, quoting *Graham*, at 166 (emphasis in original). That is because an award of damages against an official in his individual capacity can be executed only against the official's personal assets, while an award of damages against an official in his official capacity can only be executed against the government entity itself. *Id.*[6] Thus, the Western District treated the plaintiff's claims against the current and former district attorneys, in their official capacities, as claims against the District Attorney's Office for the 11th Judicial District.[7] For the same reasons, this Court should treat plaintiffs' remaining Section 1983 claims against Perrilloux and Peever, in their official capacities, as claims against the District Attorney's Office for the 21st Judicial District for which they work.

In *Johnson*, the Western District of Louisiana went on to explain that, under *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2010, 56 L.Ed.2d 611 (1978), local

---

[6] The Western District of Louisiana, in *Johnson*, also rejected the DA defendants argument that they were entitled to Eleventh Amendment immunity in their official capacities. The court explained that it is well-established that Louisiana district attorneys are considered representatives of the state's political subdivisions rather than of the state itself and are not entitled to Eleventh Amendment immunity. *Id.*, citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999)("The rule in this circuit is that a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity"). Perrilloux and Peever have not asserted that they are entitled to Eleventh Amendment immunity, but the undersigned nevertheless mentions this lack of immunity as an aside.

[7] *Id.*, at *10, citing *Burge*, 187 F.3d at 466 ("Official capacity suits represent another way of pleading an action against an entity of which an officer is an agent").

9

government agencies, such as District Attorney's offices, cannot be held liable for constitutional torts under Section 1983 pursuant to a theory of *respondeat superior*, but that they can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.*, 436 U.S. at 694, 98 S.Ct. at 2037-38. To succeed on a *Monell* claim against a local government entity, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *McGregory v. City of Jackson*, 2009 WI 1833958, *2 (5th Cir. 2009), citing *Rivera v. Houston Index. Sch. Dist.*, 349 F.3d 244, 247-49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for those deprivations resulting from the decisions of those officials whose acts may fairly be said to be those of the governmental entity. *Bryan County Comm'rs v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). The policies that give rise to Section 1983 liability must "be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy." *Collins v. Doyle*, 209 F.3d 719, *3 (5th Cir. 2000), quoting *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 (1997). In identifying those officials or governmental bodies who speak with "final policymaking authority for local government," the court must focus on the specific "action alleged to have caused the particular constitutional or statutory violation at issue" and determine whether the party responsible for that action is the final policymaker in that particular area." *Id.*

Considering that the only way to impose Section 1983 liability against a District

10

Attorney's office is pursuant to a *Monell* custom/policy claim and that the plaintiff's claims against Perrilloux and Peever, in their official capacities, are to be treated as claims against the District Attorney's office, the only remaining Section 1983 claim for the undersigned to consider is plaintiff's *Monell* custom/policy claim against the DA's office (*i.e.*, the plaintiff's claim that Perrilloux, as the final policymaker for the D.A.'s office, has implemented an unconstitutional policy of prosecuting all misdemeanor charges without investigation and regardless of whether they have merit). Because Peever is an assistant district attorney and admittedly is not the final policymaker for the D.A.'s office, plaintiffs cannot assert a viable *Monell* claim against her, and as a result, plaintiffs' official capacity claim against Peever should be dismissed.

The Western District of Louisiana, in *Johnson*, faced the precise issue before the Court herein relative to Perrilloux's official capacity liability – whether the Supreme Court's holding in *Van de Kamp* concerning failure to supervise and train claims mandates the dismissal of the plaintiff's complaint insofar as it asserts a *Monell* claim against the District Attorney's Office (*i.e.*, against the district attorney in his official capacity). In reaching its decision, the Western District considered the public policies underlying the common law rule of absolute immunity that were relied upon by the Supreme Court in *Imbler*, as well as the public policies underlying municipal liability under Section 1983. *Johnson*, at *11. The court explained that the immunity afforded to prosecutors at common law was based upon the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."

11

*Id.*, at *12, quoting *Imbler*, at 423. The Supreme Court held that those same considerations of public policy require absolute immunity for prosecutors under Section 1983, rather than qualified immunity. *Id.* The affording of only qualified immunity to the prosecutor could have an adverse effect upon the criminal justice system's goal of accurately determining guilt or innocence, which "requires that both the prosecution and defense have wide discretion in the conduct of the trial and the presentation of evidence." *Id.* Not only would the public trust of the prosecutor's office suffer, but the triers of fact would often be denied relevant evidence if prosecutors were constrained in making every decision by their concern of resulting *personal* liability. *Id.* The ultimate fairness of the operation of the criminal justice system itself would be weakened if prosecutors were subject to *personal* liability under Section 1983. *Id.*

The Western District of Louisiana, however, found that the same considerations of public policy underlying the *Imbler* decision did not necessitate immunity for *Monell* claims against a District Attorney's Office as an entity (or, as here, official capacity claims against a district attorney).[8] The Western District explained that, in *Monell* custom/policy claims, a plaintiff is not attacking the individual advocacy decision made by a prosecutor, or even the administrative decisions of a prosecutor that are intimately connected with his advocacy functions and the trial process. *Id.*, citing *Van de Kamp*, at 862-63. Instead, the plaintiff is attacking only the official policies and procedures of the entity itself that cause

---

[8] The court noted that the concerns that justify absolute and qualified immunity for government officials are "less compelling, if not wholly inapplicable, when the liability of the municipal entity is at issue." *Id.*, citing *Owen v. City of Independent, Mo.,* 445 U.S. 622, 653, n. 37, 100 S.Ct. 1398, 1416, n. 37, 63 L.Ed.2d 673 (1980)(although imposing personal liability on public officials is likely to have an undue chilling effect on the exercise of their decision-making responsibilities, no such pernicious consequences are likely to flow from the possibility of a recovery from public funds).

12

constitutional injury. The court noted that a district attorney cannot be held personally liable for the constitutional injuries caused by those policies and procedures; any damages must be recovered from a liability insurer or from the public funds controlled by the district attorney or his successor-in-interest. *Id.*, citing *Burge*, at 470. Citing two recent decisions out of the Middle District of Alabama and the District Court for Nebraska, where *Van de Kamp* was relied upon to dismiss only individual capacity claims, the Western District of Louisiana, in *Johnson*, concluded that a district attorney is not entitled to absolute immunity with respect to an official capacity *Monell* custom/policy claim because, "[u]nhampered by a concern of unfounded litigation and the threat of personal liability, a district attorney can freely promulgate and implement official policies and procedures without deflecting his energies from his public duties." *Id.,* citing *Hall v. Alabama*, 2010 WL 582076 (M.D.Ala. 2010)(distinguishing between individual and official capacity claims); *White v. Smith*, 2009 WL 3335967 (D.Neb. 2009)(relying on *Van de Kamp* to dismiss only the individual capacity claims).[9]

---

[9] The Western District of Louisiana, in *Johnson*, found that absolute immunity should not be applied to *Monell* custom/policy official capacity claims because "[t]he central aim of the Civil Rights Act was to provide protection to those persons wronged by the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." While individual prosecutors may not be able to disavow all liability for their wrongdoings, as they may be punished criminally and/or subjected to professional discipline, the same does not hold true for a municipal entity. Rather, "[a] damages remedy against the offending [entity] is a vital component of the scheme for vindicating cherished constitutional guarantees." *Id.*, at *12. Furthermore, the "threat that a municipal entity will be liable for damages to an aggrieved individual should encourage official policymakers to promulgate and implement internal rules and programs 'designed to minimize the likelihood of unintentional infringements on constitutional rights." *Id.*

Finally, the Western District noted that the conclusion that absolute immunity does not extend to *Monell* claims is supported by the exacting requirements that a plaintiff must establish in order to recover on a claim based upon a policymaker's failure to take affirmative action:

> [W]hen a plaintiff seeks to impose Section 1983 liability on a municipality for its failure to train its employees, normal tort standards are replaced with heightened standards of culpability and causation. Liability will only

13

The undersigned agrees with the reasoning set forth by the Western District of Louisiana in *Johnson* and therefore finds that Perrilloux, as the final policymaker for the 21st Judicial District,[10] is not entitled to the protection of absolute immunity relative to plaintiffs' official capacity claims against him. *Johnson*, at *13. At this stage in the litigation, under Rule 12(b)(6), the Court must liberally construe the Complaint in favor of the plaintiffs. *Johnson*, at *13, citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). As mentioned above, Perrilloux argues that the plaintiffs have failed to state a claim against him in his official capacity because he is entitled to absolute immunity under an extension of *Imbler*'s and *Van de Kamp*'s policies to official capacity claims. However, as with the DA defendants in *Johnson*, he is unable to point to any cases from a superior court in which a *Monell* claim against a District Attorney's office has been expressly dismissed on the basis of absolute immunity. In contrast, the Fifth Circuit has allowed plaintiffs to proceed with such claims and has affirmed judgments in favor of the plaintiff in spite of the assertion of defenses of absolute and qualified immunity by district attorneys. *See, Burge*,

---

attach if the municipality was *deliberately indifferent* to the constitutional rights of citizens - a showing of negligence or even gross negligence will not suffice. Errors of judgment do not alone prove deliberate indifference, nor is such heightened culpability established simply by showing that a municipality could have ordered more or different training or even misjudged whether training was necessary. Similarly, to satisfy causation, the plaintiff must demonstrate that the failure to train was the *moving force* behind the constitutional violation - "but for" causation is not enough.

*Thompson II*, at 297-98 (emphasis in original). As such, few plaintiffs are able to surpass the heightened pleading standards and set forth sufficient factual allegations that, taken as true, demonstrate a constitutional injury caused by the deliberate indifference of a municipal entity and its policymakers. *Johnson*, at *13.

[10] Louisiana's constitutional and statutory provisions indicate that a district attorney is the independent and final official policymaker for all the administrative and prosecutorial functions of his office. *Johnson*, at *11, n. 19, citing *Burge*, at 469, and the statutes cited therein.

Case 3:10-cv-00507-JJB-SCR   Document 36   01/20/11   Page 15 of 19

187 F.3d 452 (holding that a district attorney may be held liable in his official capacity); *Spikes v. Phelps*, 131 Fed.Appx. 47, 48 (5th Cir. 2005)(absolute prosecutorial immunity is "unavailable in an official capacity suit against a Louisiana district attorney"); *Thompson I*, 553 F.3d 836 and *Thompson II*, 578 F.3d 293 (affirming $14 million judgment in favor of the plaintiff on claims against Orleans Parish District Attorney's Office). This Court also recognizes the uncertainty created by *Van de Kamp* and the debate over whether municipal liability under Section 1983 is consistent with the doctrine of absolute immunity but agrees with the Western District of Louisiana that there is no binding authority from a superior court holding that the doctrine of absolute immunity applies to *Monell* claims and that it is inappropriate to speculate as to whether the doctrine will ultimately be expanded beyond its present scope to official capacity claims. Accordingly, because of the lack of any binding authority supporting the argument that Perrilloux is entitled to absolute immunity concerning the plaintiffs' official capacity *Monell* claim, the plaintiffs may proceed against him on that claim to the extent they have otherwise stated a claim upon which relief may be granted under *Monell*.

As discussed above, in order to succeed on a *Monell* claim against a local government entity, plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *McGregory*, at *2. While plaintiffs have alleged that Livermore's constitutional rights were violated as a result of the policy of the District Attorney's Office for the 21st Judicial District in prosecuting all misdemeanors regardless of whether or not they have merit, the undersigned finds that they have failed

15

to state a claim upon which relief may be granted under *Monell* because they have not alleged facts demonstrating a constitutional violation which was the "moving force" behind that alleged policy. What plaintiffs' claim boils down to is an allegation that the District Attorney's Office has a policy of prosecuting all misdemeanors without first investigating them to determine whether they have merit. Thus, the constitutional violation alleged is a failure to investigate prior to initiating and proceeding with misdemeanor prosecutions. The Fifth Circuit has specifically recognized that a claim "that [a] prosecutor failed to investigate is not of constitutional dimension" because "[t]here is no such due process right." *See, Johnson v. Louisiana*, 2010 WL 996475, *10 (W.D.La. 2010); *Simmons v. Wainwright*, 585 F.2d 95, 96 (5th Cir. 1978)(per curiam); *Arney v. Roberts*, 9 F.3d 116 (10th Cir. 1993), *cert. denied*, 511 U.S. 1055, 114 S.Ct. 1618, 128 L.Ed.2d 345 (1994)("the charge that a prosecutor has failed to conduct a proper investigation does not state a constitutional claim").[11] Thus, even though Perrilloux is not entitled to absolute immunity with respect to plaintiffs' *Monell* claim, such claim should nevertheless be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Additionally, to the extent plaintiffs contend that Perrilloux violated his Fourth Amendment rights by maliciously prosecuting him, they likewise have not stated a constitutional claim, as the Fifth Circuit has expressly held that "'malicious prosecution' standing alone is no violation of the United States Constitution" and that no "freestanding

---

[11] Additionally, even if plaintiffs' *Monell* claim was not subject to dismissal because of the failure to allege a constitutional violation, it would also be subject to dismissal because the plaintiff has failed to specifically allege a pattern of constitutional violations caused by the alleged general policy (such as any other cases where misdemeanors were prosecuted by the 21st Judicial District D.A.'s office without investigating whether the charges had merit), as required when proceeding under a policymaker theory of liability. *See, Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 408, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

16

right to be free from malicious prosecution exists." *Devillier v. Calcasieu Parish Dist. Attorney's Office,* 2007 WL 2815846, *2 (W.D.La. 2007)(dismissing plaintiff's Section 1983 claim against the Calcasieu Parish District Attorney's Office that he was being maliciously prosecuted for a crime that he did not commit on the basis that malicious prosecution is not a viable constitutional claim), quoting *Castellano v. Fragozo*, 352 F.3d 939, 942, 945 (5th Cir. 2004).[12] Accordingly, plaintiffs' Section 1983 *Monell* claim against Perrilloux fails because the plaintiffs have not alleged a constitutional violation that was the "moving force" underlying the alleged policy.

Finally, as to the contention that plaintiffs' state law claims against Perrilloux and Peever for malicious prosecution, negligent and/or intentional infliction of emotional distress, and failure to supervise, train, etc. should be dismissed for failure to state a claim, the undersigned agrees. Louisiana state courts have routinely recognized the reasoning in *Imbler* and have granted absolute immunity to prosecutors, who are acting within the scope of their prosecutorial duties as advocates for the State, from state law claims arising "as a consequence of conduct intimately associated with the judicial phase of the criminal process." *See, Johnson*, at *14, quoting *Knapper v. Connick*, 681 So.2d 944, 949 (La. 1996)(prosecutor protected by absolute immunity from suit for malicious prosecution); *Counsel v. Small*, 2001 WL 617455, *9 (E.D.La. 2001)(holding that absolute immunity was applicable to all state law claims asserted by the plaintiff). Accordingly, the present motion

---

[12] *See also, Patterson v. Orleans Parish Dist. Atty. Office*, 2007 WL 5063238 (E.D.La. 2007)(dismissing a plaintiff's Section 1983 claim against the Orleans Parish District Attorney's Office for malicious prosecution on the basis that plaintiff failed to state a claim. The court quoted the Fifth Circuit's decision in *Castellano* stating that "causing charges to be filed without probable cause will not[,] without more[,] violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim").

17

to dismiss shall be granted with respect to the plaintiffs' state law claims as to both Perrilloux and Peever because they are entitled to absolute immunity from suit on those claims.[13]

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Dismiss Pursuant to FRCP Rule 12(b) (R. Doc. 31) filed by defendants, Scott M. Perrilloux and Catherine T. Peever, should be **GRANTED** and that the plaintiffs' remaining claims against Perrilloux and Peever should be **DISMISSED WITH PREJUDICE**. The case continues relative to plaintiffs' claims against Sheriff Graves and Deputy Arnold.

Signed in chambers in Baton Rouge, Louisiana, January 20, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[13] Furthermore, even if such claims were not subject to dismissal on the basis of absolute immunity, this Court should nevertheless dismiss plaintiffs' state law claims because all claims over which it has original jurisdiction (*i.e.*, plaintiffs' federal claims) have been dismissed. *See,* 28 U.S.C. §1367 (A district court may decline to exercise supplemental jurisdiction over state law claim(s) if it has dismissed all claims over which it has original jurisdiction or if the state law claim(s) would predominate over any remaining federal claim(s)).