UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


FRANK LIVERMORE, ET AL

VERSUS

JOEL ARNOLD, ET AL

CIVIL ACTION

NUMBER 10-507-JJB-SCR


**RULING**

This matter is before the Court on the motions for summary judgment filed by Defendant Joel Arnold (hereinafter "Arnold")[1] and Defendant Sheriff Willie Graves (hereinafter "Graves").[2] Plaintiffs Frank Livermore (hereinafter "Livermore") and Linda Cervizzi (hereinafter "Cervizzi") have opposed the motions.[3] The Court has already issued a Ruling denying all of the Defendants' motions.[4] The Court now assigns reasons for its Ruling.

**I.    Factual Background[5]**

Plaintiff Frank Livermore owned the land located at 36726 Longleaf Drive in Independence, Louisiana. Linda Cervizzi owned a

_____

[1]Rec. Doc. Nos. 50 & 51.

[2]Rec. Doc. No. 48.  Sheriff Graves has also filed a motion to dismiss (Rec. Doc. No. 49).

[3]Rec. Doc. Nos. 54 & 55.

[4]Rec. Doc. No. 100.

[5]The Court must note that nearly all of the facts surrounding the incident which led to Livermore's arrest are strongly disputed by the parties.

Doc#47997

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 1 of 24

mobile home located on Livermore's property. Livermore and Cervizzi had leased the mobile home to Christopher Smith, who they claim they evicted on the morning of June 3, 2009 for failure to pay rent and use of drugs on the property.

Smith was removed from the property by defendant police officer Joel Arnold. However, after allegedly being evicted, Smith or persons acting on his behalf allegedly contacted friends employed by the Livingston Parish Sheriff, and on the afternoon of June 3, 2009, Arnold returned to the Longleaf property and put Smith back in possession of the mobile home.

Livermore and Cervizzi voiced their objections to Arnold. Arnold then threatened to arrest Cervizzi and told Livermore that if he didn't calm down, stop talking, and leave his own property, Arnold would arrest him as well. Livermore told Arnold he would not comply and would not resist arrest if Arnold chose to arrest him. Arnold allegedly roughly turned Livermore towards the police car and repeatedly shoved him in a violent manner against the back of the car. Arnold then handcuffed Livermore and placed him in the back of the police car. When Cervizzi attempted to speak to Arnold, he allegedly told her to "butt out." Arnold allegedly told Cervizzi she had 15 seconds to come down from the deck of the mobile home or he would also arrest her.

Another deputy arrived on the scene, and Arnold told Livermore he was being charged with interfering with a police officer.

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 2 of 24

Livermore was later prosecuted in state court and was acquitted. Once back in the mobile home, Smith vandalized the home and stole the refrigerator, air conditioners, and other items.

Livermore filed suit against Arnold claiming: false arrest, false imprisonment, malicious prosecution, unlawful seizure of his person, cruel treatment, failing to provide medical attention, violation of the Constitution and other laws of the United States and Louisiana, excessive and unreasonable use of force, and the unlawful seizure and taking of Livermore's property and putting Smith into possession of the property which resulted directly in Smith's theft of, and vandalism to, Livermore's property.

Cervizzi filed suit against Arnold claiming: unlawful seizure of her person, cruel treatment, violation of the Constitution and other laws of the United States, excessive and unreasonable use of force and/or threat of use of force and threat of unlawful arrest to force Cervizzi to leave her property, and the unlawful seizure and taking of Cervizzi's property and putting Smith into possession of the property which resulted directly in Smith's theft of, and vandalism to, Cervizzi's property.

Both plaintiffs filed suit against Sheriff Willie Graves alleging he is vicariously liable for the acts alleged against Arnold under Louisiana law and liable under 42 U.S.C. § 1983 for his negligent hiring, retention, training, and supervision of Arnold.

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 3 of 24

Arnold moved for summary judgment against both plaintiffs, denying that he used excessive force against either plaintiff. Arnold contends the deprivation of property did not occur "under color of state law" because Arnold did not vandalize or steal any of plaintiffs' property. Arnold also contends plaintiffs cannot establish any conspiracy theory or joint participation theory as between Arnold and Smith. Cervizzi was not touched in any way, so she cannot claim false arrest or excessive force. Arnold also contends that he is entitled to qualified immunity for any actions taken in this matter because he did not violate either plaintiffs' "clearly established" federal rights, and he acted as any reasonable officer would have under the circumstances.

Defendant Willie Graves, previous Sheriff of Livingston Parish, moved to dismiss plaintiffs' claims and alternatively moved for summary judgment on plaintiffs' claims. Graves contends he cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of Arnold. Graves contends plaintiffs cannot maintain a claim against him for inadequate hiring, retention, training, and supervision. Graves contends a single, violent incident cannot form the basis of a Section 1983 claim against the sheriff/municipality.

## II.  Law and Analysis

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 4 of 24

## A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] The Supreme Court has interpreted the plain language of Rule 56© to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[8] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[9]

If the moving party meets this burden, Rule 56© requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or

---

[6]Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[8]*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[9]*Id.* at 1075.

other admissible evidence that specific facts exist over which
there is a genuine issue for trial.[10]  The nonmovant's burden may
not be satisfied by conclusory allegations, unsubstantiated
assertions, metaphysical doubt as to the facts, or a scintilla of
evidence.[11]  Factual controversies are to be resolved in favor of
the nonmovant, "but only when there is an actual controversy, that
is, when both parties have submitted evidence of contradictory
facts."[12]  The Court will not, "in the absence of any proof, assume
that the nonmoving party could or would prove the necessary
facts."[13]  Unless there is sufficient evidence for a jury to return
a verdict in the nonmovant's favor, there is no genuine issue for
trial.[14]

        In order to determine whether or not summary judgment should
be granted, an examination of the substantive law is essential.
Substantive law will identify which facts are material in that
"[o]nly disputes over facts that might affect the outcome of the
suit under the governing law will properly preclude the entry of

---

[10]*Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[11]*Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[12]*Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[13]*McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[15]

The Court now turns to a discussion of the parties' claims.

## B.  Motions of Joel Arnold

Arnold has been sued in both his individual and official capacity.  Arnold has asserted the defense of qualified immunity for all of his actions.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[16]  To determine whether qualified immunity applies, the court conducts the two-part analysis set forth in *Saucier v. Katz*.[17]  The court decides "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."[18]  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear

---

[15]*Id.* at 248, 106 S.Ct. at 2510.

[16]*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

[17]533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

[18]*Deshotels v. Marshall*, 454 Fed. Appx. 262, 266, 2011 WL 5456108 (Nov. 10, 2011), citing *Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 7 of 24

to a reasonable officer that his conduct was unlawful in the situation he confronted."[19]  If the answer to either of the two above questions is "no," then qualified immunity applies and the government official is immune from suit.  The plaintiff bears the burden of overcoming the qualified immunity defense.[20]

### 1. Excessive Force

Any claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment and its "reasonableness" standard.[21]  To prevail in an excessive force case, "a plaintiff must show that he was seized and that he 'suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'"[22]  Determining whether an officer's use of force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat

[19]*Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

[20]*Deshotels*, 454 Fed. Appx. at 266, citing *Bennett v. City of Grand Prairie, Tex.,* 883 F.2d 400, 408 (5th Cir. 1989).

[21]*Id.* at 266-67, citing *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 487 (5th Cir. 2001)(quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

[22]*Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006)(quoting *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 8 of 24

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[23]  Courts must be mindful that police officers are often required to make split-second judgments "in circumstances that are tense, uncertain, and rapidly evolving" and must evaluate an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[24]

Livermore has presented evidence from treating physicians as to the alleged physical injuries resulting from this altercation. A jury could believe Livermore's medical records and physicians and find for him on this issue.  There is a material issue of disputed fact as to whether Arnold's alleged throwing of Livermore against the patrol car and alleged handcuffing him as tightly as possible was objectively reasonable under the facts of this case.

The Court believes that "the severity of the crime at issue" in this case - whether interfering with a police officer or disturbing the peace - under the facts established by the record tends to weigh in favor of Livermore that unreasonable force was used.  Livermore was on his own property and was angry, but did not threaten Arnold in any way.  There is disputed evidence that Livermore posed an immediate threat to the safety of Arnold or others, and whether he was actively resisting arrest or attempting

---

[23]*Graham*, 490 U.S. at 396.

[24]*Id.* at 396-97.

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 9 of 24

to flee.  The Court cannot weigh credibility of witnesses at the summary judgment stage, even where qualified immunity has been asserted.   Because  the  resolution  of  this  issue  requires credibility determinations of whether Livermore or Arnold are telling the truth, summary judgment is not proper.  The credibility determinations of witnesses in this case is a question for the jury to decide.

Cervizzi alleges Arnold unlawfully seized her person and her property by placing Smith back into possession of her property after he had allegedly been lawfully evicted.  Cervizzi also alleges that Arnold threatened the use of excessive force and threatened unlawful arrest against her person in the exchange between Arnold and Cervizzi during this incident.  Once again, the factual allegations are disputed between these parties and the those factual disputes must be resolved before the Court can rule on qualified immunity as to Cervizzi's claims.

### 2.   Unreasonable Search and Seizure

The seizure of plaintiffs' property without a warrant must be based on probable cause to avoid a constitutional violation.[25]

Livermore argues his unreasonable seizure claim is not only for his property but also the seizure of his person.  Livermore contends there was no probable cause to seize his person and make this arrest, and for the same reasons discussed above, the Court

---

[25]*United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999).

believes this is a question for the jury. Livermore and Arnold give completely different accounts of their behavior during this altercation, and it is not for the Court to determine who is telling the truth in a summary judgment motion.

As to Cervizzi's claims, Arnold concedes that an unlawful eviction violates clearly established constitutional rights. Cervizzi points to Arnold's argument that, had he evicted Smith without a court order and in absence of legal authority, he would have violated Smith's clearly established Fourteenth Amendment rights. In this same vein, Cervizzi contends that by ordering her to leave her own property while allowing Smith to return and retake possession, Arnold effectively evicted Cervizzi from her own property while making the exact kind of possessory determination Arnold concedes he lacked the authority to make. Plaintiffs contend Arnold violated both of their rights under the Fourteenth Amendment, and has foreclosed his claim for state law immunity by acting "outside the course and scope of [his] lawful powers and duties" under La. R.S. 9:2798.1(B).

The Court finds that plaintiffs have presented sufficient summary judgment evidence to create genuine issues of material fact under the analysis set forth above, and the questions raised should be resolved by a jury.

### 3. False Arrest/False Imprisonment

To prevail on a Section 1983 claim for false arrest/false

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 11 of 24

imprisonment, a plaintiff "must show that [defendant] did not have probable cause to arrest him."[26] "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"[27]

In this case, Livermore argues Arnold arrested him for resisting an officer when no such crime had been committed by Livermore or anyone else. For the crime of resisting an officer to be committed, the officer must be in the act of making a lawful arrest, making a lawful search, or serving legal process. La. R.S. 14:108. Arnold was not doing any of these when Livermore allegedly "interfered" with him. This is supported by the fact that the state court threw out these charges against Livermore.

Livermore argues that without the existence of any elements of the offense for which he was arrested being present in the first place, there could be no probable cause that Livermore was guilty of resisting an officer. Arnold now claims Livermore was disturbing the peace – a crime that Livermore was not charged with nor arrested for, and could not have committed as a matter of fact

---

[26]*Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004), citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).

[27]*Id.* at 655-56, quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 12 of 24

since the statute is limited to disturbing the peace of public streets and places. La. R.S. 14:130. All of the events in this incident took place on Livermore's own property.

The Court finds that there are genuine issues of material fact as to all of plaintiffs' claims against Arnold. Specifically, the Court finds that the following issues must be resolved by a jury before the Court can determine whether Arnold is entitled to qualified immunity on any claims: (1) whether Arnold had legal authority to place Smith back into possession of the mobile home; (2) whether Smith had abandoned the premises by returning the key to plaintiffs and allegedly beginning to vacate the property; (3) whether Arnold acknowledged that the occupants were voluntarily leaving the property at the time he arrived on the scene; (4) whether Livermore engaged in behavior such that Arnold had probable cause to arrest him; (5) whether Arnold had the authority to order Plaintiffs to vacate their own properties; (6) whether Arnold used excessive force against Livermore under the circumstances; (7) whether Livermore committed the crime of resisting an officer; and (8) whether Livermore committed the crime of disturbing the peace.

In denying Arnold's motions for summary judgment, the Court is guided by the analysis and holding in *Lytle v. Bexar County, Texas*.[28] *Lytle* involved a suit brought against the city and a police officer after he fired his sidearm at the rear of a vehicle,

---

[28] 560 F.3d 404 (5th Cir. 2009).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 13 of 24

striking and killing a fifteen year old passenger. The district court had found that several material facts regarding the car chase were disputed, and denied summary judgment on the defendants' assertion of qualified immunity. The officer filed an interlocutory appeal on the issue of qualified immunity.

The Fifth Circuit noted that "[a] genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."[29] Furthermore, "[i]f the determination of qualified immunity would require the resolution of a genuinely disputed fact, then that fact is material and we lack jurisdiction over the appeal."[30] The Fifth Circuit also recognized that it is "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."[31]

The Fifth Circuit accepted the facts in light most favorable to the plaintiff and then addressed the objective reasonableness of the officer's use of force. The court stated, "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury. This is not only because the jury must resolve disputed fact issues but also because

---

[29] *Id.* at 408, quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[30] *Id.*, citing *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 483 (5th Cir. 2001).

[31] *Id.* at 409, quoting *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 14 of 24

the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness."[32]

The *Lytle* court also noted that:

[I]n those cases where the officer's conduct is less clear and an assessment of reasonableness mandates a number of factual inferences, the case falls within the province of a jury. Thus, when determining whether the officer's alleged conduct violated the constitutional right to be free from unreasonable seizures, we must remain mindful of the role that the jury can play in this determination.[33]

* * *

But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative. In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.[34]

Based on the evidence submitted by both parties, the Court finds that it is necessary for the jury to determine the credibility of the witnesses which will aid the Court in determining whether Arnold's conduct was objectively reasonable in the incident which occurred.

The Court now turns to discussion of Sheriff Graves' motions.

**C.    Motions of Sheriff Graves**

Sheriff Graves has been sued in both his official and individual capacities. An official capacity suit is the equivalent

---

[32]*Id.* at 411.

[33]*Id.*

[34]*Id.* at 412.

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 15 of 24

of a suit against the entity of which the officer is an agent.[35]
Thus, the suit against Sheriff Graves in his official capacity as
the Sheriff of Livingston Parish is a suit against Livingston
Parish, a municipality.[36]

A municipality is not liable for constitutional violations
committed by its employees unless those violations result directly
from a municipal custom or policy.[37] Liability under the doctrine
of *respondeat superior* is not cognizable in Section 1983 actions.[38]
It is, however, "clear that a municipality's policy of failure to
train its police officers can rise to § 1983 liability."[39] For
purposes of Section 1983, an official policy is a:

> policy statement, ordinance, regulation or decision that
> is officially adopted and promulgated by the
> municipality's lawmaking officers or by an official to
> whom the lawmakers have delegated policy-making
> authority. Alternatively, official policy is a
> persistent, widespread practice of city officials or
> employees, which, although not authorized by officially
> adopted and promulgated policy, is so common and well
> settled as to constitute a custom that fairly represents
> municipal policy. Finally, a final decisionmaker's

---

[35]*Nowell v. Acadian Ambulance Service, et al*, 147 F.Supp.2d
495, 500 (W.D. La. 2001)(internal citations omitted).

[36]See *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 392 (5th Cir. 2000).

[37]*Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir.
2010), citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385,
109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Conner v. Travis County*,
209 F.3d 794, 796 (5th Cir. 2000).

[38]*Id.* at 380, citing *Cozzo v. Tangipahoa Parish Council-
President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002).

[39]*Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 16 of 24

adoption of a course of action tailored to a particular situation and not intended to control decisions in later situation' [sic] may, in some circumstances, give rise to municipal liability under § 1983.[40]

The Supreme Court has held that "a municipality can be liable for failure to train its employees when the municipality's failure shows 'a deliberate indifference to the rights of its inhabitants.'"[41] "Deliberate indifference is more than mere negligence."[42] A plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonabl[y] be said to have been deliberately indifferent to the need."[43]

Finally, a showing of deliberate indifference "is difficult, although not impossible, to base on a single incident."[44] Claims of inadequate training generally require that the plaintiff

---

[40]*Sanders-Burns*, 594 F.3d at 380-81, quoting *Brown v. Bryan County*, 219 F.3d at 157 (internal citations and quotations omitted).

[41]*Farmer v. Brennan*, 511 U.S. 825, 840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(citing *City of Canton*, 489 U.S. at 389).

[42]*Conner*, 209 F.3d at 796.

[43]*City of Canton*, 489 U.S. at 390.

[44]*Sanders-Burns*, 594 F.3d at 381, citing *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000); *Conner*, 209 F.3d at 797.

Case 3:10-cv-00507-JJB-SCR    Document 104    03/12/13    Page 17 of 24

demonstrate a pattern.[45] "Notice of a pattern of similar violations is required."[46] The prior acts "must be 'fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party.'"[47] The "single incident exception" is narrow, and to rely on the exception, "'a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.'"[48]

With respect to negligent hiring, the Supreme Court has established two fundamental requirements for holding a municipality liable under § 1983 for inadequate hiring policies.[49] First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences.[50] Second, the municipality must be the "moving force" behind the constitutional

---

[45]*Id.*, citing *Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 n. 34 (5th Cir. 2005).

[46]*Davis*, 406 F.3d at 383.

[47]*Sanders-Burns*, 594 F.3d at 381, quoting *Davis*, 406 F.3d at 383.

[48]*Id.*, quoting *Davis*, 406 F.3d at 386 (quoting *Brown*, 219 F.3d at 462 (internal quotation marks omitted)).

[49]*Hardeman v. Kerry County Tex.*, 244 Fed. Appx. 593, 596 (Aug. 8, 2007).

[50]*Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 18 of 24

violation.[51] For Sheriff Graves to be liable for hiring Arnold, the Court must find "that adequate scrutiny of his background would have led a reasonable supervisor to conclude that the plainly obvious consequence of hiring him" would have resulted in a situation like that alleged by the plaintiffs in this case.[52] Even a showing of heightened negligence in hiring will not give rise to a constitutional violation.[53]

As stated previously, a supervisor may not be held liable under the doctrine of *respondeat superior*. Rather, to be liable under Section 1983, a supervisory official "must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights."[54] A sheriff not personally involved in the acts that deprived a plaintiff of his constitutional rights is liable under Section 1983 if: "1) the sheriff failed to train or supervise the officers involved; 2)

_____

[51]*Id.*

[52]*Hardeman*, 244 Fed. Appx. at 596 (*See Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000)("[D]eliberate indifference exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights.")).

[53]*Gros*, 209 F.3d at 434.

[54]*Nowell*, 147 F.Supp.2d at 503, citing *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); *Thompson v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 19 of 24

there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[55]

Arnold was hired by Graves in 2007. Plaintiffs contend other than unpaid work as a Town of Livingston reserve police officer, Arnold's only other paid law enforcement job was as a sheriff's deputy in Lee County, Tennessee from 1995 to 1997. The records of Arnold's employment in Lee County reveal numerous complaints of excessive force and other misconduct by Arnold as well as his communication problem with people on the street and an inability to deal with people in a professional manner. Plaintiffs contend these exhibits are public records under Louisiana and Tennessee law and are admissible under Rule 803(8).

Arnold's employment with Lee County allegedly resulted in 5 instances of disciplinary investigations, three claims being excessive use of physical force. The last complaint against Arnold involved similar accusations as those alleged herein – Arnold throwing a citizen against his police car. Arnold then allegedly stepped on the man's chest and had to be restrained by a fellow deputy. Arnold was ultimately relieved of his duties as Deputy Sheriff of Lee County.

More recently, Arnold resigned from the Livingston Parish

---

[55]*Id.* (internal citations omitted).

Sheriff's Office under similar conditions. He then applied for work as an auxiliary police officer with the Springfield Police Department. The Springfield Police Chief referred Arnold to Dr. Robert Davis for a psychological/liability assessment. Dr. Davis found Arnold to be an elevated liability risk for several things, specifically for the use of "excessive force or physically aggressive behaviors that are inappropriate."[56] Plaintiffs contend the liability concerns identified by Dr. Davis were "knowable, known, and well documented by Lee County Sheriff's personnel well before Graves hired Arnold."[57] Plaintiffs also contend Arnold's behavior was foreseeable and predictable well before Graves hired Arnold in 2007. Arnold's superiors in Lee County identified Arnold's personality problems in 1996 and concluded they were not likely to change.

Plaintiffs allege they have submitted requests for production of documents seeking materials relating to Graves' hiring, training, and supervision of Arnold and to Arnold's temperament and work history, including complaints of battery, excessive use of force, and/or false arrest, etc. Graves responded that all such materials are irrelevant. Plaintiffs submit the fact that Graves finds these materials irrelevant is only further proof of his deliberate indifference to Arnold's personality, conduct and

---

[56]Rec. Doc. No. 55, Exhibit C.

[57]Rec. Doc. No. 55, p.6.

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 21 of 24

inability to interact with others without undue aggression and violence.

Plaintiffs further contend that they have presented ample evidence of Arnold's work history and conduct which renders Graves' employment and retention of Arnold not only negligent but deliberately indifferent to the rights of those whose rights it was reasonably foreseeable that Arnold would violate.

The Court finds that plaintiffs have presented sufficient evidence to survive a motion to dismiss or for summary judgment. While plaintiffs have not presented evidence of an established policy in Livingston Parish, the Court finds that plaintiffs have submitted evidence creating issues of fact regarding what the Livingston Parish Sheriff knew, or should have known, about Arnold's prior work history prior to hiring him. Furthermore, plaintiffs have submitted evidence which would tend to support that Arnold's work history showed a pattern of violent behavior, not just isolated incidents.

The Court finds that the motion to dismiss and for summary judgment by Graves should be denied in both his official and individual capacities because the following issues must be resolved in part by a jury and in part by the Court: (1) whether Sheriff Graves knew, or should have known, about Arnold's work history prior to his hire; (2) whether Arnold was properly trained and supervised based on his previous work history; (3) whether Sheriff

Graves had knowledge of only one prior work incident (as alleged by the Defendant) or five prior work incidents involving Arnold (as alleged by plaintiffs); (4) whether the need for more training and/or supervision should have been obvious to Sheriff Graves; (5) whether, based on Arnold's prior work history, the incident on Livermore's property was reasonably foreseeable as an obvious consequence to employing Arnold; (6) whether Sheriff Graves' alleged failure to train and/or supervise was the "moving force" behind the alleged constitutional violation; and (7) whether Sheriff Graves was deliberately indifferent to the known or obvious consequences that would result from hiring Arnold given his work history. The Court believes that several factual disputes must be resolved before the Court can make the legal determinations required on the issue of qualified immunity.

### D. Denial of Qualified Immunity Not Immediately Appealable

It is clear from the discussion set forth above that disputed material facts predominate in this case. The Court recognizes that, generally, unless a decision is final under 28 U.S.C. § 1291, the Fifth Circuit lacks jurisdiction to review a denial of a summary judgment unless the denial of summary judgment on qualified immunity grounds is based on a conclusion of law. The Fifth Circuit has held:

> [O]rders denying qualified immunity are immediately
> appealable only if they are predicated on conclusions of
> law, and not if a genuine issue of material fact
> precludes summary judgment on the question of qualified

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 23 of 24

immunity.  Stated another way, we have jurisdiction over law-based denials of qualified immunity, but do not have jurisdiction over a genuine-issue-of-fact-based denial of qualified immunity.[58]

The Fifth Circuit has also stated, "if a factual dispute must be resolved to make the qualified immunity determination, that fact issue is material, and we lack jurisdiction over the appeal."[59]

The Court has found that there are several factual disputes in this matter which must be resolved by the trier-of-fact before the Court can make a determination of qualified immunity.

## III. Conclusion

For the reasons set forth above, Defendant Joel Arnold's motions for summary judgment are denied.  Defendant Sheriff Graves' motion to dismiss and alternative motion for summary judgment are also both denied.

Baton Rouge, Louisiana, <u>March 12, 2013</u>.

_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[58] *Naylor v. State of La., Dep't of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997)(*per curiam*).

[59] *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

Case 3:10-cv-00507-JJB-SCR   Document 104   03/12/13   Page 24 of 24